UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NIKITA I.,

      Petitioner,

    v.

WARDEN, CENTRAL VALLEY
ANNEX; et al.,

      Respondents.

No. 1:26-cv-02517-TLN-AC

A # 244-684-329

**ORDER**

This matter is before the Court on Petitioner Nikita I.'s[1] ("Petitioner") Amended Petition for Writ of Habeas Corpus (ECF No. 16) and Motion for Temporary Restraining Order ("TRO") (ECF No. 4). The matters are fully briefed. (*See* ECF Nos. 8, 13, 19.) For the reasons set forth below, Petitioner's Amende Habeas Petition is GRANTED.[2] (ECF No. 16.) Petitioner's Motion for TRO is DENIED as moot. (ECF No. 4.)

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] On June 29, 2026, the Court issued a minute order granting Petitioner's habeas petition and ordering his immediate release. (ECF No. 20.) This Order explains the Court's reasoning.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum-seeker who entered the United States with his wife and minor child on August 23, 2024.  (ECF No. 1 at 3.)  After presenting themselves to U.S. Customs and Border Patrol and requesting political asylum, Petitioner and his family were released on parole into the United States.  (*Id.* at 3, 12; ECF No. 8-1 at 3.)  They eventually settled in Northern California.  (ECF No. 1 at 3.)  The family now includes a United States citizen infant.  (*Id.*)  Petitioner attended yearly check-ins with U.S. Immigration and Customs Enforcement ("ICE") and maintains that he complied with all parole conditions.  (*Id.*; ECF No. 4 at 2.)  He obtained work, paid taxes, participated in community and church volunteer activities, and applied for asylum.  (ECF No. 1 at 3, 15–23; ECF No. 4 at 3.)  Petitioner supported his family as the primary financial provider and only licensed driver in the household.  (ECF No. 4 at 5.)

On February 21, 2026, Petitioner was arrested for embezzlement and grand theft based on allegations made by his employer.  (ECF No. 8-3 at 1.)  After Petitioner appeared at the county sheriff's station for an interview, he was arrested without issue, booked, and released.  (*Id.* at 5–6; ECF No. 13 at 4.)  The matter was thereafter referred to the local district attorney's office.  (ECF No. 8-3 at 6.)  Petitioner disputes the allegations and maintains his innocence.  (*Id.* at 5; ECF No. 1 at 3.)  There is no information on the record as to whether charges were ultimately filed.  (*See generally* ECF No. 8-2.)  The government's records only contain information about the arrest.  (*Id.* at 6.)  According to Petitioner, "[t]here has not yet been any adversarial testing of the allegations against [him]."  (ECF No. 13 at 4.)

On March 11, 2026, Petitioner was arrested by ICE.  (ECF No. 1 at 4.)  According to Petitioner, ICE officers surrounded him outside a Starbucks, pointed firearms at him, and detained him without a warrant or explanation.  (*Id.*; ECF No. 4 at 2.)  He was detained at Golden State Annex and later transferred to Central Valley Annex.  (ECF No. 1 at 4; ECF No. 16 at 2.)  On May 28, 2026, over two months into his detention, an immigration judge denied Petitioner's application for asylum and ordered him removed to his country of citizenship.  (ECF No. 19-1.)

Petitioner has been detained without a hearing for over three months.  (ECF No. 16 at 5.)  He challenges the lawfulness of his civil detention and seeks immediate release.  (*Id.* at 6–12.)

2

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (ECF No. 16 at 6–11.) In opposition, Respondents first argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).[3],[4] (ECF No. 8 at 2–4.) In a subsequent filing, Respondents argue Petitioner will be subject to mandatory detention under § 1231 if he does not appeal his removal order and the order becomes administratively final. (ECF No. 19 at 1.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due

---

[3]    Unless otherwise noted, citations to statute herein refer to Title 8 of the United States Code.

[4]    Respondents also argue that if the Court grants Petitioner immediately release, the government must not be enjoined from removing Petitioner from the United States under an executable final order of removal. (ECF No. 8 at 4–5.) As the Court has not entered an injunction so described, Respondents' argument need not be addressed.

process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a protected liberty interest in his continued freedom. The government's decision to release Petitioner on parole when he came to the United States in 2024 was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Petitioner maintains that he complied with the conditions of his release. Respondents do not dispute this. Furthermore, Petitioner has lived in the United States approximately two years during which time he became involved in his community, worked, provided for his family, and pursued his immigration case. Petitioner has a clear liberty interest in his continued freedom protected by the Fifth Amendment. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions allowing petitioner to remain in the community for over five years strengthened his liberty interest).

The mandatory detention scheme of § 1226(c) does not defeat Petitioner's liberty interest. *See S.E. v. Noem*, No. 1:26-CV-00356-DAD-SCR, 2026 WL 206085, at *2 (E.D. Cal. Jan. 27,

2026) (finding petitioner has a liberty interest in as-applied challenge to § 1226(c) detention.) Section 1226(c) provides for mandatory detention of a noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(ii).  However, requiring mandatory detention for a mere arrest where prosecutors have not pressed charges raises serious due process concerns.  *Singh v. Chestnut*, No. 1:26-CV-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) (noting the same).  For that reason, courts have construed § 1226(c) to apply to a noncitizen arrested for the crimes listed in the statute only where the underlying criminal matter remains pending.  *Id.*; *see also Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025) (noting § 1226(c) "no longer requires mandatory detention when charges are resolved via acquittal or dismissal and none of the other clauses apply").  That is not the case here where despite being arrested for a listed offense, there is no indication that charges were ever filed.  (*See generally* ECF No. 8-2.)  Based on this record, Court is not persuaded that § 1226(c) mandates Petitioner's detention or supersedes his liberty interest.

As to Respondents' second argument on § 1231, Petitioner is not subject to mandatory detention under the statute because his removal order is not administratively final.  Furthermore, a new statutory basis for detention does not unilaterally terminate Petitioner's liberty interest or vanish his due process claims.  *See Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (noting a "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the 'shall' in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)" (citing *Demore*, 538 U.S. at 526; *Nielsen v. Preap*, 586 U.S. 392, 419 (2019); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023))).  "Petitioner's rights are not limited to those laid out by statute." *Mohammed v. Warden of California City Det. Ctr.*, No. 1:26-CV-00118-DJC-CSK, 2026 WL 192368, at *2 (E.D. Cal. Jan. 26, 2026) (citing *Nielsen*, 586

U.S. at 420); *see also Doe*, 787 F. Supp. 3d at 1093 ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.") (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)).  Accordingly, Petitioner maintains a clear interest in his continued liberty protected by the Due Process Clause.

              B.       Process Required

       To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to a custody or bond hearing.

       First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe*, 787 F. Supp. 3d at 1094 ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

       Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994.  Petitioner's removal order is not final, and Respondents do not claim Petitioner is a danger to the public or a flight risk.  As Petitioner points out, he was arrested for a nonviolent

crime without incident after he voluntarily attended an interview with local law enforcement. (ECF No. 16 at 9.)  The sheriff then released him.  (*Id.*)  Petitioner also has substantial ties to the United States that include his wife and children residing in the country.  In light of these circumstances, the risk that Petitioner is being detained without proper justification is exceedingly high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without procedural protections is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal.  *See Doe*, 787 F. Supp. 3d at 1094.  Custody determination hearings are routine processes for Respondents.  The Court certainly recognizes the government has an interest in immigration enforcement and removing individuals for whom there is a final order of removal.  However, the government can execute its interests in removing individuals while adhering to the most basic procedural safeguards.  Respondents set forth no legitimate interest in continuing to detain Petitioner without such safeguards.  Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to a hearing before a neutral decisionmaker to ensure his detention was justified.  Respondents provided no such hearing over Petitioner's over three months of detention.  Respondents have therefore violated Petitioner's Fifth Amendment procedural due process rights.[5]

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 16) is GRANTED.  IT IS HEREBY ORDERED:

1.    **Within two (2) court days** from the date of this Order, Respondents shall file a notice certifying compliance with the Court's order that Petitioner be immediately released from custody.  (ECF No. 20.)

---

[5]    Petitioner also challenges his detention as violating the Administrative Procedure Act. (ECF No. 16 at 11–13.)  As the Court concludes Petitioner's detention violates the Constitution, the Court need not address Petitioner's statutory claim.

2.    Petitioner's Motion for TRO (ECF No. 4) is DENIED as moot.

3.    Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

4.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: June 29, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE